UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SHANNON LACHELLE REAUX  CIVIL ACTION NO. 11-CV-0884

VERSUS  JUDGE HAIK

MICHAEL J. ASTRUE
COMMISSIONER OF THE SOCIAL  MAGISTRATE JUDGE HANNA
SECURITY ADMINISTRATION

## *REPORT AND RECOMMENDATION*

Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it is

recommended that the Commissioner's decision be AFFIRMED.

## BACKGROUND

The claimant, Shannon Lachelle Reaux was born  on July 22, 1977. [Doc. 7-1[1], Tr.

118, 144] She has a high school education; she speaks, reads/writes and understands English.

[Tr. 148, 153]  She worked from 1993 to 2006 for several different employers, as a grocery

store cashier, a seamstress in a factory, a server in restaurants as a lead worker, and an

expediter for a jewelry manufacturer. [Tr. 119, 130-143,150-51]

On January 11, 2007, at the age of 30, Reaux applied for disability insurance benefits,

alleging a disability onset date of August 1, 2004. [Tr. 118, 144] She alleged her ability to

---

[1]The transcript of the administrative hearing(s) is made a part of the record at Rec. Doc. 7-1. Pages are numbered at the bottom right corner, and transcript/record references will be made in this document as Tr. __.

work is limited by spina bifida, high blood pressure, migraines, and blurred vision. [Tr. 149, 271] She asserts she is in chronic pain; her legs give out; she has migraines and spasms.  She alleges she can no longer drive due to blurred vision. [Tr. 149, 271] Although she alleges she became unable to work because of these conditions as of August 1, 2004, she acknowledges she has worked since that time. [Tr. 167]  Her last date of work was December 24, 2006, when she was fired from her job as a restaurant server due to excessive absences. [Tr. 149]

The agency denied Reaux's application for benefits, and, at the claimant's request a *de novo* hearing was conducted by Administrative Law Judge Ruth Markart on January 22, 2009. [Tr. 36-71] Reaux was represented by counsel.  On June 24, 2009, ALJ Markart issued her decision, denying benefits. [Tr. 24-32] The claimant sought review by the Appeals Council, which request was denied. [Tr. 1-4]  This suit followed.

## ASSIGNMENT OF ERRORS

Shannon Reaux  argues that the ALJ erred in failing to follow the guidelines of SSR 96-9p in denying her disability benefits.  She argues that the ALJ failed to meet the Commissioner's burden of proof that she could sustain work activity on a regular basis, since there was no substantial evidence to support the denial of benefits.  Finally, Reaux argues that the ALJ erred in substituting her opinion of medical evidence, disregarding the opinion of consulting doctors, which the claimant asserts is reversible error. [Rec. Doc. 12, p. 2-5]

## APPLICABLE  LEGAL STANDARDS  AND  SCOPE OF REVIEW

Any individual, after any final decision of the Commissioner of Social Security in which he was a party may obtain a review of the decision by a civil action. 42 U.S.C. 405(g). This court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in reaching that decision. *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible, and any findings of fact by the Commissioner that are supported by substantial evidence are conclusive and must be affirmed. *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir. 2005); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

'Substantial evidence' is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel,* 239 F.3d at 704. Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole. *Singletary v. Bowen*, 798 F.2d at 823. In applying this standard, the court may not re-weigh the evidence in the record, try the issues *de novo,* or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Boyd v. Apfel,* 239 F.3d at 704; *Carey*

*v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law.  *Dellolio v. Heckler*, 705 F.2d 123, 125(5th Cir. 1983). To determine whether the decision to deny social security benefits is supported by substantial evidence, the court weighs the following factors: (1) objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) plaintiff's age, educational background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174(5th Cir. 1995).  Any conflicts in the evidence regarding the claimant's alleged disability are to be resolved by the administrative law judge, not the reviewing court.  *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000).  To make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-344(5th Cir. 1988); citing *Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983).

*Disability* is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). *Substantial gainful activity* is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. §404.1572(a)-(b).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential analysis, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

If the Commissioner determines that the claimant is disabled at any step, the analysis ends.  20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot make a determination at any step, she/he goes on to the next step.  20 C.F.R. § 404.1520(a)(4). When assessing a claim for disability benefits in the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  *Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S.Ct. 885, 107 L.Ed.2d 967(1990). If the claimant is not actually working and his impairments match or are equivalent to one of the listed impairments, the Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §423(d)(2)(B).   The medical

findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment. *See Zebley*, 493 U.S. at 531, 110 S.Ct. 885.  It is the claimant's burden to prove at step three that his impairment or combination of impairments matches or is equivalent to a listed impairment. *Id.* at 530-31.  For a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of the specified criteria, no matter how severe, does not qualify. *Id.*  Ultimately, the question of equivalence is an issue  reserved for the Commissioner.  *Spellman v. Shalala*, 1 F.3d 357, 364(5th Cir. 1993).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). The assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 CFR § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step, it is used to determine whether the claimant can adjust to any other type of work. 20 CFR § 404.1520(e).  When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of performing any other work.  *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520.  The testimony of a vocational expert is valuable in this regard, as such expert "is familiar with the specific requirements of a particular occupation, including working

-6-

conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170(5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132(5th Cir. 1995).

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform  other substantial work in the national economy.   If the Commissioner  makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.  *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

When a mental disability claim is made, such as bipolar disorder or major depressive disorder, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim.  Essentially, this procedure  substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings.  The regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment.   Furthermore, §404.1520(a)(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments. *Satterwhite v. Barnhart*, 44 Fed. Appx. 652(5th Cir. 2002)(unpublished).

-7-

## ANALYSIS AND DISCUSSION

### *The Administrative Record:*

In her application for benefits and interviews provided during that process, Shannon Reaux described her educational background, employment history and job requirements, and the conditions she alleges have limited her abilities to be gainfully employed. [Tr. 144-193] Although she reported limitations in her abilities to do most physical tasks, she indicated that her conditions had no affect on her abilities to talk, hear, see, understand and get along with others. [Tr. 183] She described herself as able to handle stress and changes in routine very well. [Tr. 184]

References in medical records submitted into the record document the claimant's complaints of headaches and back pain and multiple emergency room visits for pain medications during 2004-2006. [Tr. 269] In 2005, Reaux learned for the first time of a congenital spina bifida condition, noted in MRI findings in March and May, 2006 to be a "minimal" defect, with otherwise normal findings. [Tr. 233]  A lumbar MRI in February, 2007, compared to the 2006 studies, showed no evidence of disk herniation, canal compromise or neural foraminal encroachment, impressions unaltered from the previous studies. [Tr. 209-10, 223, 233, 405]

On March 8, 2007, the claimant was examined by Dr. Erica Howe. [Tr. 268-273] Reaux was tearful during the interview and she was uncooperative during the physical examination, refusing a visual acuity examination altogether, despite complaints of blurry

-8-

and decreased vision. Dr. Howe noted inconsistencies in the patient's reported symptoms and limitations and her actions during the examination process.  Concluding that Reaux had not given her best effort during the exam, the doctor nevertheless found the claimant to be limited as to standing, sitting, lifting, and bending.  Dr. Howe did not find that Reaux's high blood pressure caused any limitation for her, and she did not find that the claimant had any visual or communicative limitations. [Tr. 272-273]

On March 20, 2007, the claimant was treated at Abrom Kaplan Memorial Hospital after she was found at a local Dollar General store with decreased mental status.  Drug screen results were positive for cocaine and marijuana.  The claimant left the hospital against medical advice. [Tr. 355-356, 363]

A psychological assessment was conducted by Dr. Alfred Buxton, PhD on May 22, 2007. [Tr. 282-299] At that time, Dr. Buxton noted that Reaux was able to manage money, communicate, and manage time independently. She was noted to have good verbal receptive and expressive language skills, good social skill, good ability to attend and concentrate, and good judgment.  The claimant's intellect appeared to be within normal limits, and she evidenced good reasoning and reflective cognition with fair insight.  The doctor opined that Reaux was competent to manage her own personal affairs. [Tr. 283-284] He noted what appeared to be a dysthymic disorder with mild impairment and a fair prognosis. [Tr. 284, 289] Dr. Buxton noted no functional limitations regarding activities of daily living, with mild limitations in maintaining social functioning and maintaining concentration, persistence, and

pace. [Tr. 296] Noting his impression that the claimant has dysthemia, a personality disorder not otherwise specified, with strong histrionic features and the tendency to somatize, Dr. Buxton suggested that the claimant "would likely not perform in a reliable and dependable fashion as an employee." [Tr. 284-285] Nevertheless, the psychologist assigned a G.A.F. score of 60[2] in describing the claimant's past 12 months. [Tr. 285] In rating of Reaux's functional limitations, under the "B" criteria, the claimant was noted to have no limitations greater than 'Mild,' and no episodes of decompensation were noted. [Tr. 296] The records contain no indication that the claimant ever received mental health treatment of any kind, and Dr. Buxton recommended outpatient mental health treatment.

During June, 2007, the claimant was refused refills of her prescription for Lortab at University Medical Center, with notations that the patient was not believed to have a legitimate condition to take Lortab. [Tr. 389, 403]

Shannon Reaux was examined by Dr. Savina Luke on July 3, 2007. At that time, the claimant's gait and range of motion were within normal limits, except for flexion at the waist and hip, which the doctor believed was effort-dependent.  No spasms, no neurological defects and no atrophy were noted.  The claimant's body was noted to be well-muscled, well-toned

---

[2]The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning."   A GAF score of 51-60 indicates "moderate symptoms," or "moderate difficulty in social or occupational functioning."  A GAF score of 41-50 indicates "[s]erious symptoms...[or]serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3(10th Cir. 2004)(quoting American Psychiatric Association, diagnostic and Statistical Manual of Mental Disorders 32, 34(Text Revision 4th ed. 2000)).

and consistent with a person who stays reasonably fit. [Tr. 327] There were no sensory or motor deficits noted; grip strength was excellent at 5/5, with normal grasping ability.  Visual acuity with correction was acceptable at 20/30 bilaterally.  Again the examining physician noted the patient's poor effort. [Tr. 327]

On November 25, 2008, records from the internal medicine clinic at University Medical Center noted the claimant's pain-restricted movements during examination, but documented nurses' observations of the patient walking normally on exiting the examination room and in the parking lot. [Tr. 426-428]

Beginning in January, 2007, Shannon Reaux was seen by Dr. Tricia Lege' for complaints of blurred vision.  Dr. Lege' noted glaucoma as a suspected condition. [Tr. 311-322, 328-329]  By January, 2008, the claimant's vision was measured at acceptable levels in both eyes. [Tr. 422-424]  Reaux continued in treatment/monitoring by Dr. Lege', whose diagnosis remained unchanged. Except for the prescription of medication and eyeglasses, Dr. Lege did not document any restriction in the claimant's activity, and she opined that the claimant's headaches are unrelated to the suspected glaucoma condition. [Tr. 424]

On February 9, 2009, at the request of the ALJ, the claimant was evaluated by Dr. Robert Casanova relative to her vision and vision-related limitations.  Reaux's vision was noted to be 20/25(near) an 20/30(far) with best correction. [Tr. 438]  The diagnosis was noted as myopia/asigmatism; glaucoma suspect; prognosis good.  Dr. Casanova found that Reaux can read fine print, large print, handle and work with large objects, drive, and operate

-11-

machinery.  Per the doctor, she can avoid objects in pathways and avoid people approaching from the side. [Tr. 437-38]

***The Administrative Hearing:***

At the administrative hearing on January 22, 2009, all medical records and other documents were received into evidence without objection.

*Shannon Lachelle Reaux* described her educational background to have included high school completion, and she confirmed her ability to read, write and do basic arithmetic. [Tr. 43] She also described her ability to drive an automobile when unaffected by headaches. [Tr. 44] She further described her employment history to have included work as a restaurant server, waitress, and expeditor for a jewelry manufacturing company, at first cleaning jewelry and later being promoted to inputting jewelry batch numbers into a computer system. [Tr. 44-48] She testified that she stopped working when she became pregnant and was placed on bed rest. [Tr. 49] After the birth of her child in May, 2005, she returned to waitress work at Chili's Bar and Grill, but she was terminated for excessive absenteeism.  She offered that there may be a racial reason for her termination, since she was the only black employee at the time. [Tr. 45]

Reaux testified that she did not know she had a spina bifida condition until more recently, since her pregnancy in 2004. [Tr. 50-51] Her blood pressure is now controlled with medication. [Tr. 51] She does, however, continue to have daily migraine headaches. [Tr. 51-

52] She has recently experienced problems with bowel/bladder incontinence, and when she touches people, including her daughter, she gets electrical shocks. [Tr. 66-67]

In January, 2007, the claimant was examined by an eye doctor who suspected glaucoma.   She described blurred vision and an inability to see to the sides. [Tr. 53-54] She confirmed her ability to read bold, large print, but she denied being able to read a newspaper, see people approaching from the side or tripping hazards. [Tr. 54-55] During her testimony, the claimant pointed out something 'white' on the face or clothing of the ALJ. [Tr. 56]

The claimant testified she spends most of her time in bed.  Her parents cook for her and her daughter, do shopping for them, do other household chores, and occasionally assist with personal needs. [Tr. 55-58] Reaux can walk across the street to her mother's house, about fifty feet. [Tr. 62]She testified that she can stand only about three minutes and sit about five to ten minutes.  She can lift and carry no more than five to ten pounds. [Tr. 63] She can kneel/squat, but she cannot get back on her feet.  She can sometimes pick up small things with her fingertips, and she can button, snap and zip. [Tr. 64]

According to the claimant, most of her medical treatment is provided through University Medical Center, and she never sees the same doctor. [Tr. 59-60]

*A vocational expert* was called to testify, without objection. He was present during the testimony of the claimant, and he had reviewed the record concerning Reaux's vocational history. [Tr. 67] He responded to questions about the skill and exertional levels of Reaux's past employment.  He described waitress work as light.  The jewelry job described by the

-13-

claimant was broken down by the expert into positions as a jewelry sorter and a jewelry helper, both of which were light work positions.  The data entry aspect of the jewelry expeditor position was described as sedentary work. [Tr. 68-69] The VE responded to hypothetical questions from the ALJ, factoring the claimant's age, education and work experience and assuming that Reaux could lift/carry 20 pounds occasionally and 10 pounds frequently, that she could stand/walk/sit for about six hours out of eight, and that she would be limited relative to pushing/pulling consistent with her lift/carry restrictions.  Additionally, the expert was asked to assume that the claimant could not climb, work with machinery, heights or other hazards, and she could work with things rather than with people. [Tr. 69] With those assumptions, the expert opined that the claimant could not perform the work of a waitress, but she could perform the duties of the jewelry expeditor position as described. [Tr. 69] Additional hypothetical questions were asked of the expert, assuming that the claimant could do sedentary work, lift/carry 10 pounds occasionally, less than 10 pounds frequently.  She could stand/walk only two out of eight hours and sit six out of eight hours with the same limitations.  With those assumptions, the expert opined that there is sedentary, unskilled work which such a person could do.  He gave examples of a bookkeeping clerk and an information clerk, both of which are sedentary positions, available in the state and national economies. [Tr. 70] The expert was asked to add to the hypothetical question the assumption that the claimant could not read newspaper size print and had limited bilateral peripheral vision.  With those assumptions, the expert opined that such an individual would not be able

-14-

to work. [Tr. 70] Finally, the expert was asked to add the assumption that the person could not maintain work activity for eight hours a day, five days a week on a sustained basis, and he opined that such a person could not be employed full-time. [Tr. 70] The expert was not cross-examined by the claimant's counsel.

At the close of the hearing, the ALJ declared her intention to review the entire record prior to issuing her decision, including the evidence submitted on/after the hearing date and the results of an evaluation of the claimant by an opthalmologist.

### *The Decision of the ALJ:*

The record  demonstrates that the ALJ followed the requisite five step sequence in analyzing the claims of Shannon Reaux.  At step one, the Commissioner found that Reaux has not engaged in substantial gainful activity since her alleged disability onset date of August 1, 2004, noting that the claimant worked after the alleged onset date, but the work activities did not rise to the level of substantial gainful activity. [Tr. 26] That finding is supported by evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: chronic back pain, migraine headaches, hypertension, blurred vision and glaucoma. [Tr. 26] This is also supported by evidence in the record.  The ALJ considered Reaux's mental impairment of dysthymia to be non-severe, since it does not cause more than minimal limitation in her ability to perform basic mental work activities. [Tr. 26] In making that finding, the ALJ followed the appropriate specialized Step 2 rules discussed above for

-15-

evaluation of mental disorders.  In considering the four broad functional areas referenced as the 'paragraph B' citeria, she found that Reaux has no limitation in activities of daily living; she has mild limitation in the area of social functioning.  She has mild limitation in concentration, persistence and pace, and she has experienced no episodes of decompensation which have been of extended duration. [Tr. 26-27] On these findings, the characterization of the claimant's mental disorder as non-severe is appropriate.  20 CFR 404.1520a(d)(1) and 416.920a(d)(1).

At step three, the ALJ found that Reaux does not have an impairment or a combination of impairments that meets or medically equals a listed impairment. [Tr. 27] Reaux has challenged this finding, as will be discussed below.

The ALJ next found that Shannon Reaux retains the residual functional capacity(RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that her ability to push/pull is limited by the weights that she can lift/carry; she is restricted from climbing and working near hazards such as moving machinery or at unprotected heights, and she is limited to only occasionally stooping, kneeling, crouching or crawling. [Tr. 27-28]  In making that finding, the ALJ considered all symptoms noted by the claimant and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence of the claimant's work history and other activities since the onset date. She also considered opinion evidence from multiple physicians.

The record includes assessments and opinions by Drs. Erica Howe, Sabina Luke, Alfred Buxton, Tricia Lege', and Robert Casanova, each of which was  addressed in the determination document, consistent with the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p and 10 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.  In considering the claimant's symptoms, the ALJ engaged in the appropriate two-step process to conclude that Shannon Reaux's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the RFC. [Tr. 29] In considering the opinion evidence, the ALJ gave little weight to the predictions of Dr. Buxton regarding the claimant's likely reliability as an employee in light of the evidence, and he likewise declined to give great weight to the limitations opinions of Dr. Howe which were based on the reports of a patient noted to have voluntarily limited her efforts on examination.  From the marked differences/inconsistencies in limitations from March(Dr. Howe) to June, 2007(Dr. Luke) the ALJ concluded that "the claimant has been less than forthcoming in her presentation regarding whatever limitations she might genuinely have." [Tr. 30] On these conclusions, the ALJ determined that the claimant's allegations of disabling symptoms and limitations cannot be accepted." [Tr. 30] The claimant challenges this finding, as will be discussed below.

The ALJ then proceeded to step four, where she found that Reaux is unable to perform any of her past relevant work. In making that finding, the ALJ noted the positions held by the

claimant in the past, which jobs deal with working with others and significant concentration. [Tr. 30]

At step five, the ALJ properly considered Shannon Reaux's age, education, documented skills and abilities and the claimant's residual functional capacity to determine that there are jobs existing in significant numbers in the national economy that the claimant can perform. [Tr. 30]  In making that finding, the ALJ acknowledged that Reaux's ability to perform all or substantially all of the requirements of sedentary work has been impeded by additional limitations.  Thus, "to determine the extent to which these limitations erode the unskilled sedentary occupational base," the ALJ called upon the vocational expert at the hearing to testify regarding the existence of jobs in the national economy for an individual like Reaux. [Tr. 31] In responding to hypothetical questions, the expert offered two representative occupations which the claimant could perform, including the sedentary positions of bookkeeper clerk and information clerk.  As to each, the expert provided the numbers of available jobs in the national and state economies.  Based on the expert's testimony, the ALJ concluded that Shannon Reaux is capable of making a successful adjustment to other work that exists in significant numbers in the national economy,  making a finding of 'not disabled' appropriate. [Tr. 31]

**1.  *The ALJ properly applied SSR 96-9p in denying disability benefits.***

Reaux argues that the ALJ erred in failing to follow the guidelines of SSR 96-9p in denying her disability benefits.  At the outset, the court notes that the Fifth Circuit has

frequently relied upon Social Security rulings in evaluating ALJ decisions, although the rulings are not binding upon the court. *Myers v. Apfel*, 238 F.3d 617, 620(5th Cir. 2001).  The ruling at issue applies in situations where the residual functional capacity assessment is for less than a full range of sedentary work.  The ruling provides that although such findings are expected to be relatively rare, a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of "disabled." In the case of such an RFC assessment, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience.  SSR 96-9p. The RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis.  It is not the least an individual can do, but the most, based on all of the information in the case record.  SSR 96-9p.  In deciding whether an individual who is limited to a partial range of sedentary work is able to make an adjustment to work other than any past relevant work, the adjudicator is required to make an individualized determination, considering age, education and work experience, including any skills the individual may have that are transferable to other work, or education that provides for direct entry into skilled work, under the rules and guidelines in the regulations.  The undersigned finds that the detailed record of this case, as set out above, establishes that the ALJ followed the appropriate procedures in making the assessments reflected in the decision at issue, which decision is supported by substantial evidence.

The claimant argues that when presented the hypothetical questions calling for the assumptions that Reaux could not read newspaper size print,  had limited bilateral peripheral vision, and could not maintain work activity for eight hours a day, five days a week on a sustained basis, the VE opined that the claimant could not be employed.  While those questions were asked of the expert, eliciting the referenced response, they were not the only scenarios posed to the VE, who responded to multiple different hypothetical queries from the ALJ as described above.  The Fifth Circuit has held that an ALJ need only incorporate into the hypothetical questions posed to a vocational expert those claimed disabilities that are supported by the evidence and recognized by the ALJ.  Thus, it is of no significance that the ALJ rejected the VE's testimony regarding the claimant's alleged inability to attend work regularly in reaching his decision.  *Masterson v. Barnhart*, 309 F.3d 267, 273(5th Cir. 2002); *Bowling v. Shalala*, 36 F.3d 431, 436(5th Cir. 1994).   Only the question which posed the hypothetical containing the elements of the ALJ-determined RFC needed to be asked.  Further, the VE's opinion is not binding on an adjudicator, but must be weighed along with all other evidence. SSR 96-9p.  In the instant case, the record demonstrates that the ALJ rejected the opinions/assessments which formed the basis for the claimant-preferred hypotheticals.

Since the claimant has asserted that her alleged disabilities are constant and longstanding, and she has not alleged that her symptoms are episodic or intermittent, the no separate declaration by the ALJ that Reaux could maintain employment was necessary.

*Frank v. Barnhart*, 326 F.3d 618,619-620(5th Cir. 2003).  As is the usual case, the issue of whether the claimant can maintain employment is subsumed in the analysis regarding the claimant's ability to obtain employment.[3]

### 2.    *The ALJ properly considered and weighed the medical evidence and opinions of consulting doctors.*

Reaux next argues that the ALJ erred in substituting her opinion of medical evidence, disregarding the opinion of consulting doctors, which the claimant asserts is reversible error. She argues specifically that the ALJ failed to properly consider and weigh the opinions of the consulting psychologist, Dr. Alfred Buxton.  The detailed Decision of the ALJ confirms that the opinions of Dr. Buxton were carefully considered, including the psychologist's predictions of what the claimant is likely to do in the future. [Tr. 28] Finding those predictions to be contradictory to the medical evidence and Dr. Buxton's own descriptions of the claimant, and applying the proper standard, the ALJ rejected the psychologist's predictions as insignificant in the determination of the claimant's disability status.  That rejection was based on substantial evidence cited in detail in the determination document. Medical opinions are given deference only if those opinions are shown to be more than conclusory and supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485(5th Cir. 1985).

---

[3]By definition, the RFC is a measure of plaintiff's capacity to do physical and mental work activities on a regular and substantial basis. 20 CFR §404.1545, SSR 96-8p.

The ALJ also gave little weight to the opinion of Dr. Howe regarding the physical limitations of the claimant.  Noting the inconsistencies of the claimant's reports with the medical evidence and the doctor's acknowledgment that the claimant failed to give her best effort on examination, the ALJ found that the doctor's opinions were not supported by the medical records cited in the determination.

An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  *Qualls v. Astrue*, 339 Fed. App'x 461, 466 (5th Cir. 2009), citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).  It is true that the opinions of a claimant's treating physician are generally entitled to great weight. *Paul v. Shalala*, 29 F.3d 208, 210(5th Cir. 1994).  Reliance can be decreased and even rejected by the ALJ for good cause, however, and the ALJ may disregard statements by such physician which are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236(5th Cir. 1994).  When a treating or examining physician's opinions are inconsistent with other substantial evidence in the record, the opinions are not entitled to any specific weight in the ALJ's decision. *DeLeon v. Barnhart*, 174 Fed. App'x 201, 202 (5th Cir. 2006), citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). When an ALJ's residual functional capacity assessment is based at least in part on the function-by-function analysis of claimant's exertional limitations contained in a state examiner's medical report, the legal standard set forth in the jurisprudence and in SSR 96-8p is satisfied.  *See Onishea v. Barnhart*, 116 Fed.

App'x. 1, 2 (5th Cir. 2004). It is clear to the undersigned that the ALJ did consider the opinions of all physicians and all of the medical evidence in the record at the time of the hearing and submitted thereafter, accepting some and rejecting some, when reaching her conclusion that Shannon Reaux retained the residual functional capacity to perform work at the levels described in the RFC.  Accordingly, the undersigned finds that the ALJ did not err in her assignment of weight to the physicians' statements and that the Commissioner's residual functional capacity finding was reached by use of the proper legal analysis and is supported by substantial evidence.

### 3.     *The claimant failed to prove that her alleged vision impairment meets or equals Listing 2.03A.*

The claimant has also asserted that she should have been found, at step three, to meet Listing 2.03A relative to her vision condition. Listing 2.03A requires contraction of the visual field in the better eye, with the widest diameter subtending an angle around the point of fixation no greater than 20 degrees. 20 CFR 404, Subpt. P, App. 1.  Except for the arguments by the claimant's attorney that Reaux's vision studies show such restriction, there is no evidence in the record to allow for that conclusion.  No such declaration or opinion appears in the records of the claimant's treating physician Dr. Tricia Lege'. [Ex. 9F, 11F, 16F]  In fact, at the start of the administrative hearing, the ALJ commented:

> Now, there are documents from the eye doctor in the file.  Unfortunately it's technical charts and numbers with no interpretation.  So I have no way of figuring out what those documents are actually suppose to be telling me.  So I think what I will do is have you go to an ophthalmologist at the expense of the Social Security Administration.  Have the opthalmologist do a visual field

-23-

check on you and give me an interpretation to tell me just what you can and can't see, okay.  So I will hold off making a decision in the case until I get that report back from the doctor. [Tr. 39]

The step three burden of proving that an impairment meets or equals a listed impairment falls to the claimant.  *Myers v. Apfel*, 238 F.3d 617, 619(5th Cir. 2001). Although the ALJ declared her inability to interpret the medical records from Dr. Lege, no additional, clarifying information was submitted by the claimant.   The referenced opthalomological examination was completed by Dr. Robert Casanova on February 9, 2009, and those results were relied upon by the ALJ in formulating the RFC for the claimant. Ultimately, the question of equivalence is an issue reserved for the Commissioner. *Spellman v. Shalala*, 1 F.3d 357, 364(5th Cir. 1993). The undersigned finds that the ALJ's step three finding is supported by substantial evidence.

### 4.     *The ALJ properly considered and evaluated the claimant's credibility.*

While not specifically assigned as error by the claimant, the undersigned notes that the credibility of the claimant was a key factor in the Commissioner's analysis in this case. The evaluation of credibility is a task particularly within the province of the ALJ.  *Harrell v. Bowen*, 862 F.2d 471, 480(5th Cir. 1988).  Since he enjoys the benefit of perceiving first-hand the claimant at the hearing, the ALJ's credibility evaluation is not properly reweighed by this court, and it is entitled to considerable deference. *Falco v. Shalala*, 27 F.3d 160, 163 n. 18(5th Cir. 1994); *Chambliss v. Massanari*, 269 F.3d 520, 522(5th Cir. 2001).  "Once a medical impairment is established, the subjective complaints of pain must be considered

-24-

along with the medical evidence in determining the individual's work capacity."  *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  In this case, the ALJ found that Reaux's medically determinable impairments could reasonably be expected to produce her alleged symptoms. Consequently, the ALJ was required to evaluate the  intensity, persistence, and limiting effects of the symptoms.   "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p, *1. The regulations state:  "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, *4. The Fifth Circuit has held that although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's complaints of pain," he is not required to "follow formalistic rules in his articulation."*Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).  In this case, the ALJ reviewed Reaux's testimony concerning her functional limitations, noting her inconsistent reports to doctors of her limitations.  Furthermore, the record reveals, and the ALJ noted the contradiction between Reaux's reported daily activities and limitations, and  medical records for the same time periods which documented poor effort, refusal to cooperate with examinations and drug-seeking behaviors.  The details support the conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of

these  symptoms are not credible" to the extent they are inconsistent with the RFC. [Tr. 29] The undersigned finds that the ALJ's detailed narrative was sufficient in that regard.

An ALJ may discount a claimant's subjective complaints when the alleged impairments contradict the medical evidence. *Hernandez v. Astrue*, 278 Fed. App'x 333, 340 (5th Cir. 2008).  In this case, the ALJ was presented with medical evidence that Shannon Reaux has essentially normal MRI studies of her spine; she has refused to cooperate in physical examinations and visual acuity tests.  She has given poor effort during examinations, followed by contradictory physical activity levels observed by her treatment providers. Further, a claimant's activity level may be properly considered in evaluating the credibility of his subjective complaints.  *See Leggett v. Chater*, 67 F.3d 558, 565 n.12(5th Cir. 1995). In this case, the ALJ found that the claimant's reported activities, including actions observed and documented by nurses and physicians, warranted the conclusion that she is not as incapacitated as she has claimed.  Accordingly, the ALJ's finding regarding the claimant's credibility is supported by the evidence in the record.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned determines that the Commissioner's findings are supported by substantial evidence, and the proper standards were applied in the evaluation of the evidence.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 20th day of August, 2012.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE